2001 UT App 366

**AUTOLIV ASP, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICE, Workforce Appeals Board; and Marvin E. Mickles, Respondents.**

No. 20001055–CA.

Court of Appeals of Utah.

Dec. 6, 2001.

---

Janet Hugie Smith and Paul C. Burke, Ray, Quinney & Nebeker, Salt Lake City, for Petitioner.

Suzan Pixton & Virginia S. Smith, Department of Workforce Services, Salt Lake City, for Respondents.

Before JACKSON, Associate P.J., and BILLINGS and THORNE, Jr., JJ.

## OPINION

THORNE, Jr., Judge:

¶ 1 Petitioner Autoliv, ASP, Inc. (Autoliv) appeals from a Utah Department of Workforce Appeals Board (the Board) decision affirming an order granting Marvin Mickles unemployment insurance benefits. We affirm.

## BACKGROUND

¶ 2 Autoliv manufactures automobile air bags. The air bags use an explosive device in their inflators, which contain nitrates and other chemicals. On June 13, 2000, Mickles, an Autoliv production associate, was involved in an accident while at work. Mickles was operating a tug pulling three trailers of inflators. One of the trailers hit a forklift, causing five pallets of inflators to fall to the floor. Mickles picked up the inflators from the floor. He was not wearing protective clothing.

¶ 3 In accordance with Autoliv's drug and alcohol policy, "employees directly associated with an accident" are required to submit to "urinalysis or other biological specimen testing." As such, following the accident, Mickles was taken to an IHC facility for a drug test.

¶ 4 At the IHC facility, lab personnel requested that Mickles provide a urine sample. Mickles would later tell an administrative law judge that he did not wash his hands prior to giving his urine sample. Further, while providing the sample, Mickles indicated that when he moved the specimen cup from one hand to the other, his hand came in contact with the stream of urine as it entered the cup.

¶ 5 After an initial test, the laboratory personnel concluded that Mickles's sample contained sufficient nitrate levels to make the sample untestable. The test report indicated that the actual testing for drugs or alcohol was not performed because the "specimen [was] adulterated: nitrate is too high." Following this determination, lab personnel contacted Autoliv, but failed to contact Mickles and tell him that his sample contained a high nitrate level.

¶ 6 Under Autoliv's drug and alcohol policy, Autoliv could terminate an employee for an adulterated sample. After finding out that Mickles's sample was adulterated, Autoliv's human resources department contacted Mickles. The department's representative, Karen Duvall, informed Mickles that his "test result had came [sic] back positive" and that she was "processing his involuntary termination." Duvall did not tell Mickles his sample contained a high nitrate level, nor was Mickles provided an opportunity to explain the test results.

¶ 7 Following his termination, Mickles applied for unemployment insurance benefits. The Utah Department of Workforce Services (the Department) denied Mickles's request, concluding that he was terminated for "just cause." On September 8, 2000, the Utah Department of Workforce Services Appeals Section (the Appeals Section) reversed the Department's decision and granted Mickles benefits. The administrative law judge for the Appeals Section concluded that

> the employer [Autoliv] failed to offer competent or convincing evidence to establish a prima facie case to demonstrate the claimant [Mickles] deliberately altered the urine sample he provided to the drug testing facility. While the information from the testing facility showed there had been an altered sample offered by the claimant, the circumstances of that condition could not be established without testimony from the testing laboratory.... [T]he evidence provided failed to establish sufficient culpability to merit a denial of unemployment insurance benefits.

¶ 8 On November 9, 2000, the Board affirmed the Appeals Section's ruling granting Mickles unemployment insurance benefits.

The Board queried and ultimately concluded that

> [i]f the claimant [Mickles] had been working with high levels of nitrates, if the nitrates got on his hands and if his hands came in contact with the sample, could this have caused the levels of nitrates found in the sample? Since the report offered into evidence does not indicate what the nitrate level was and there was no witness to answer the question above, the employer did not meet its burden of proof.

Autoliv timely appeals.

### ANALYSIS

¶ 9 Autoliv argues the Board erred by upholding the Appeals Section's decision granting Mickles unemployment insurance benefits. Specifically, Autoliv argues the Board erred by (1) shifting the burden of proof to Autoliv to rebut Mickles's explanation for the adulterated sample; and (2) concluding that the evidence put on by Autoliv failed to satisfy this burden of proof in establishing that Autoliv terminated Mickles for just cause. However, we need look no further than the plain language of Utah Code Ann. § 34–38–6 (1997) to resolve this matter.

¶ 10 In *State v. Montoya*, 887 P.2d 857 (Utah 1994), our supreme court explained that "where [statutory] language is clear and unambiguous, we will construe that language according to its plain meaning." *Id.* at 860. Section 34–38–6, in pertinent part, states:

> All sample collection and testing for drugs and alcohol under this chapter shall be performed in accordance with the following conditions:
>
> . . . .
>
> (3) sample collection shall be documented, and the documentation procedures shall include:
>
> . . . .
>
> (b) *an opportunity for the employee ... to provide notification of any information which he considers relevant to the test. ...*
>
> . . . .
>
> (5) sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include veri-

fication or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for any action by an employer under Section 34–38–8.

Utah Code Ann. § 34–38–6(3)(b), (5) (1997) (emphasis added).

¶ 11 In the present matter, Autoliv failed to comply with the clear and unambiguous requirements of section 34–38–6. First, despite Autoliv's claims to the contrary, Duvall did not give Mickles an opportunity to explain the negative test results before terminating him. Further, Duvall did not inform Mickles that his sample was adulterated due to a high nitrate content. Duvall confirmed this when she stated:

> [I] brought Mr. Mickles in and let him know that his result had came [sic] back positive and that I was processing his involuntary termination. . . . I did not have a copy from the chemist at that date, just the call from IHC that told me it was a positive test.

Duvall also explained that "[she] did not discuss with [Mickles] what was in his sample."

¶ 12 Second, Autoliv failed to present any information showing the laboratory tested Mickles's sample according to "scientifically accepted analytical methods and procedures." Utah Code Ann. § 34–38–6(5). Autoliv offered no testimony on the procedure used to test Mickles's sample. Accordingly, we conclude the Board properly determined that Autoliv failed to satisfy the requirements of section 34–38–6.

¶ 13 The judgment of the Board is affirmed.

¶ 14 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.